# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **DENNIS L. HOGGATT,** | )<br>) |
| **Plaintiff,** | ) Case No.<br>) |
| v. | ) Judge<br>) |
| **ELECTROLUX HOME PRODUCTS, INC.,** | ) Magistrate Judge<br>)<br>) Jury Demand |
| **Defendant.** | ) |

## COMPLAINT

For his Complaint against Defendant Electrolux Home Products, Inc. Plaintiff Dennis L. Hoggatt states:

### PARTIES

1. Plaintiff is a citizen and resident of Springfield, Tennessee, and a former employee of Defendant.

2. Defendant is a Delaware corporation with its principal place of business in Cleveland, Ohio. Defendant may be served with process through its registered agent, CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, TN 37929-9710.

### JURISDICTION AND VENUE

3. This is an action for equitable relief and damages for unlawful employment practices brought under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA") and the Tennessee Disability Act, Tenn. Code Ann. § 8-50-103 and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.* (collectively "TDA"). The Court has jurisdiction under 28 U.S.C. §§ 1331, 1332, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

4. Plaintiff has met all conditions precedent to the filing of this complaint. He timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 10, 2008. The EEOC mailed Plaintiff a notice of suit rights on June 3, 2009.

## FACTS

5. Defendant hired Plaintiff as a forklift operator in January 2008 after he had served it in that capacity through Randstad temporary services agency for several months leading up to his hire date.

6. Plaintiff performed his job duties for Defendant in a competent and satisfactory manner.

7. In July 2008, Defendant transferred Plaintiff from its Wilson Warehouse facility to its main plant in Springfield, Tennessee. Defendant allowed other similarly situated employees to remain employed at the Wilson Warehouse facility.

8. At the main plant, Defendant allowed a temporary employee to perform the forklift operator job instead of Plaintiff. Defendant took Plaintiff's former job responsibilities away and assigned him manual labor tasks in a non-air conditioned "bake off" room where the temperature rose to very high levels. The temperatures and more physically demanding tasks caused Plaintiff's blood sugar level to decrease. Plaintiff spoke with Defendant's on-site nurse about his diabetes and the nurse confirmed that his blood sugar had become low.

9. Following episodes of illness due to his diabetes, Plaintiff went to Defendant's human resources office and explained that he needed medical leave to obtain treatment for his diabetes. Defendant granted Plaintiff's request and also provided him information about Family

and Medical Leave Act and/or short term disability leave available through Defendant's insurance provider.

10. Plaintiff also applied for FMLA and/or short term disability leave through Defendant's insurance provider. A representative of the provider advised Plaintiff that he could take leave. Plaintiff later received a letter indicating that he was not eligible for leave. Plaintiff did not understand the contents of the letter. In any case, Plaintiff believed that Defendant had granted him medical leave and he was already out of work treating his diabetes.

11. Plaintiff believed that he was on a medical leave of absence from Defendant from mid-or-late July through mid-September 2008. In mid-September 2008 Plaintiff's physician released him to return to work.

12. Plaintiff attempted to return to work for Defendant in mid-September 2008 and provided Defendant with a physician's note releasing him to return to work.

13. Upon information and belief, Defendant contends that upon Plaintiff's attempted return from medical leave it terminated his employment for being absent from work for several weeks. Defendant contends that, following this termination, it rehired Plaintiff in mid-September 2008.

14. Defendant required Plaintiff to get another physician's note providing that his release was with "no restrictions." Plaintiff obtained another note from his physician that also indicated that he had been receiving treatment for his diabetes from mid-to-late July through mid-September 2008. Defendant contacted Plaintiff's physician's office and verified the information that Plaintiff had provided.

15. Plaintiff resumed working for Defendant again in mid-September 2008. Defendant placed him in a "bake off" room. Plaintiff reported to Defendant that the high

temperatures had caused him to become ill and his blood sugar to drop as measured on a meter he was carrying. Plaintiff requested a few hours off and Defendant granted his request.

16. Plaintiff asked Defendant to place him back in a forklift operator job or, alternatively, in a job in a cooler area. Defendant advised Plaintiff that no such positions were available, even though it was allowing one or more temporary employees and non-disabled employees to perform such jobs.

17. While at work on or about September 18, 2008, Defendant told Plaintiff that he was being discharged because his "diabetes [was] a danger to [himself] and a risk to the company." Defendant then brought Plaintiff his personal belongings, escorted him out of its plant, and advised him to "go on disability."

## CLAIMS
### (Violations of ADA and TDA)

18. Plaintiff is disabled within the meaning of the ADA and the TDA. Plaintiff's diabetes substantially limits him in one or more major life activities. Alternatively, Defendant regarded Plaintiff as having, or he had a record of having, a substantially limiting impairment.

19. Plaintiff was otherwise qualified to perform the essential functions of his job position, and/or a forklift operator position or an equivalent one at one or more of Defendant's facilities, with or without reasonable accommodation.

20. Defendant failed to reasonably accommodate Plaintiff's disability and failed to engage in a good-faith, interactive process with him designed to identify reasonable accommodations of his disability, in violation of the ADA and the TDA.

21. In summarily requiring Plaintiff to obtain a second release to return to work "with no restrictions" Defendant failed to conduct an individualized assessment of Plaintiff's ability to

perform available jobs for which he was qualified, with or without reasonable accommodation. Defendant's 100% healed or equivalent rule violates the ADA and the TDA.

22. Defendant replaced Plaintiff with an individual who was not disabled within the meaning of the ADA and the TDA or, alternatively, Plaintiff's job remained open. Defendant also treated Plaintiff differently or less favorably than similarly situated, non-disabled individuals.

23. Defendant's purported reason for discharging Plaintiff – upon information and belief, that he violated its attendance policy – is false and unworthy of credence since Defendant contends that it rehired Plaintiff following his period of treatment for his diabetes. Defendant imposed discriminatory terms and conditions of employment upon Plaintiff because of his disability, record of disability, and/or perceived disability, in violation of the ADA and the TDA.

24. As Defendant directly indicated to Plaintiff at the time of his discharge, it discharged him because of his disability or record of disability, or because it regarded him as disabled, in violation of the ADA and the TDA.

25. Defendant cannot meet its burden of proving that it would have discharged Plaintiff in the absence of his disability, record of disability, and/or perceived disability where it contends that it rehired him in mid-September 2008 after having allegedly terminated him a few days earlier for alleged absences. Defendant cannot "carry over" disability-related absences from Plaintiff's prior period of employment into a new period of employment. To do so is to treat Plaintiff differently in the terms, conditions, and privileges of employment than other similarly situated, non-disabled individuals based on a disability. Defendant has no legitimate, non-discriminatory, legally sufficient reason for discharging Plaintiff and it is liable to him for his damages.

26. In engaging in the conduct described in this complaint, Defendant acted with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages under the ADA.

27. As a result of the conduct described in this complaint, Plaintiff has lost income and other privileges and benefits of employment; suffered embarrassment, humiliation, emotional pain and suffering, stress and anxiety, inconvenience, and loss of enjoyment of life; and incurred attorneys' fees and expenses.

## RELIEF REQUESTED

Plaintiff respectfully requests:

1. A jury trial;

2. Back pay and back benefits;

3. Reinstatement or, alternatively, front pay and front benefits;

4. Compensatory damages;

5. Punitive damages;

6. Attorneys' fees and expenses;

7. Prejudgment interest and, if applicable, post-judgment interest; and

8. Such other and further legal or equitable relief to which he may be entitled.

Respectfully submitted,

Douglas B. Janney III (BPR No. 19112)
2002 Richard Jones Road
Suite B-200
Nashville, Tennessee 37215
(615) 742-5900

Attorney for Plaintiff